IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

BRYANT MERCHANT,

    Plaintiff,

v.

    Civil Action 2:16-cv-1074
    CHIEF JUDGE EDMUND A. SARGUS, JR.
    Chief Magistrate Judge Elizabeth P. Deavers

COMMISSIONER OF SOCIAL
  SECURITY,

    Defendant.

## OPINION AND ORDER

Plaintiff, Bryant Merchant, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for social security disability insurance benefits and supplemental security income. This matter is before the Court for consideration of Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 14), and the administrative record (ECF No. 8). Plaintiff did not file a Reply. For the reasons that follow, the Court **OVERRULES** Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner's decision.

### I. BACKGROUND

Plaintiff protectively filed his application for disability insurance benefits and supplemental insurance income benefits on October 2, 2012. The Social Security Administration denied both of his claims. (R. at 22.) Plaintiff then filed another application for a period of disability and disability insurance benefits on April 19, 2013 with an onset date of May 23, 2012, after a car accident, due to neuropathy, lower back pain, knee problems and depression. (R. at

541-43.). Plaintiff's application was denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge. Administrative Law Jeannine Lesperance ("ALJ") held a hearing on May 21, 2015 at which Plaintiff, represented by counsel, appeared and testified. (R. at 69-111.) Dr. Richard Oestreich, a vocational expert, also appeared and testified at the hearing. On September 1, 2015, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 22-38.) On September 13, 2016, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-6.) Plaintiff then timely commenced the instant action.

## II. STATEMENT OF FACTS

Plaintiff was born on December 12, 1970, and was 41 years old at the time of the alleged onset date. (R. at 439.) Plaintiff has a high school education and an associate degree in culinary arts. (R. at 79.) He has past relevant work as head chef. (R. at 36.)[1] Plaintiff suffers from degenerative disease of his lumbosacral spine, degenerative disease of his knees, tarsal tunnel syndrome of his left foot, obesity, poorly controlled hypertension, anxiety, and depression. (R. at 24-30.) Plaintiff has performed small amounts of work since the onset of his disability where he was allowed to take 15-20 minute breaks or sit down for a period if needed, but these jobs did not rise to the level of substantial gainful activity. (R. at 24, 81).

---

[1] Plaintiff also had passed relevant work as a culinary assistant, home health aide, lab tech, and heavy equipment operator. (R. at 103.)

2

## III. MEDICAL RECORDS[2]

### A. Physical Impairments

Plaintiff began having knee pain in about 2003 or 2004 when he slipped in the basement of his home and injured both knees, with the left knee being more injured than the right. (R. at 654.) He underwent a meniscectomy of his left knee in 2008 and right-knee arthroscopy in January 2009. (R. at 653-656.) Plaintiff received five injections in both of his knees from September 2011 to November 2011. (R. at 648-52.)

On May 22, 2012, Plaintiff was in an automobile accident. Following the accident, with respect to his knee pain, Plaintiff underwent an MRI of his left knee in June 2012 which revealed mild blunting of the body menial meniscus with subtle undersurface change, a small focus of soft tissue density which could represent focal synovitis versus likely a small flap tear, and small joint effusion. (R. at 668.) Following the MRI, Plaintiff underwent left-knee arthroscopy which revealed a medial meniscal tear, lateral meniscal tear, grade 3 chondromalacia of the patellofemoral groove and medial femoral condyle, and lateral tilting patella. (R. at 935.) In October 2013, Plaintiff complained of chronic pain in his left knee which had worsened over the past few years. A November 2013 MRI of the left knee revealed mild chondromalacia changes of the patellar apex and lateral patellar facet without evidence of full-thickness defect, no significant subchondral abnormality, trace suprapatellar joint effusion, and no acute ligamentous meniscal, or osseous abnormality. (R. at 912.)

---

[2] In his Statement of Errors, Plaintiff challenges the ALJ based on legal arguments that are substantially unrelated to his medical records. Moreover, the Commissioner refers the Court to the ALJ's decision for a full discussion of the relevant evidence. Consequently, the Court draws largely on Plaintiff's Statement of Errors to summarize the medical records in the case.

3

As for Plaintiff's back pain, an April 2010 MRI revealed short pedicles with a developmentally narrowed central canal and foramen, L3-L4 spondylotic protrusion, right foraminal annular rent, facet arthropathy with bi-foraminal stenosis with abutment of the L3 nerve roots and mild narrowing of the central canal, and L-4-L5 spondylotic protrusion resulting in mild to moderate bi-foraminal stenosis with abutment of the L4 nerve roots and mild narrowing of the central canal. (R. at 643-44.) An October 2010 discogram revealed L3-4 disc morphology demonstrating mild degenerative changes and posterior anular tear, L4-5 disc morphology demonstrating mild degenerative changes, and L5-S1 disc morphology demonstrating mild degenerative changes. (R. at 629.) Plaintiff was then injected with steroids in the L5-S1 disc. (*Id.*)

Plaintiff continued to have back pain after the 2012 automobile accident. He was given a steroid injection in May 2013. (R. at 795.) Plaintiff showed decreased range of motion in his lumbar spine during an October 2013 doctor's visit. (R. at 915). A November 2013 MRI revealed that the bony spinal canal was congenitally small and disc and osteophytes, as well as facet and ligmentum flavum hypertrophy, contribute to further stenosis of the thecal sac and narrowing of the neural foramina. (R. at 909.) In September 2014, Plaintiff was in a pool when he lost function of his lower extremities and had some problems with incontinence of the bladder. (R. at 1031.) Plaintiff then underwent an MRI, which revealed multilevel spinal stenosis (most severe at L3-L4 and L4-L5), and focal left lateral recess-foraminal protrusion at L5-S1. (R. at 1056.) He was diagnosed with cauda equine syndrome. Plaintiff received and a lumbar laminectomy with partial foramen facetectomy at partial L3, all of L4, and partial L5.

4

(R. at 1030.) Following the laminectomy, Plaintiff attended physical therapy through December 2014. (R. at 1066-1122.)

Of particular relevance to this case, Plaintiff saw Dr. Gregory M. Figg on a referral from Dr. Harris on January 15, 2015. Dr. Figg noted that although Plaintiff had regained a majority of his neurological function, he still suffered from severe pain in his lower extremity, radiating from the back into his lower left extremity. (R. at 1123.) Plaintiff reported to Dr. Figg that his pain medication gave him some relief. Dr. Figg indicated that Plaintiff had a limited range of motion in the lumbar spine and antalgic gait favoring the left lower extremity. (R. at 1124.) Dr. Figg explained that X-rays taken of the lumbar spine showed that Plaintiff had a left-sided disk protrusion causing lateral recess stenosis and foraminal encroachment on the left side at L5-S1. (R. at 1123, 1129.) Dr. Figg also noted that Plaintiff had not had imaging since his surgery, such that he had no updated images to review. (*Id.* at 1123.)

In July 2015, surgeons implanted a spinal cord stimulator. (R. at 226-29.) The spinal cord stimulator provided Plaintiff with significant improvement in his lower extremity pain after using it for a period of months. He reported, however, that he continued to have low back pain. (R. at 56.) In December 2015, Plaintiff reported pain around 6/10 to 8/10 with usage of relatively high-dose opioids and physical therapy, and films showed facet arthritis at L2-3, L3-4, L4-5. (*Id.*)

**B. Mental Impairments**

On July 11, 2013, Sudhir Dubey, Psy.D., examined Plaintiff and the medical records for purposes of evaluating Plaintiff's disability claim. Dr. Dubey opined that in a work setting, Plaintiff would be able to understand, remember, and carry out multi-step instructions

independently. (R. at 810.) He also found that Plaintiff would be able to maintain persistence and pace to remember and carry-out simple instructions independently, but for multi-step instructions, he would need supervision. (*Id.*) Dr. Dubey noted that Plaintiff would only have a few issues dealing with co-workers and supervisors, and only some issues dealing with work pressure. (R. at 811.) Dr. Dubey diagnosed Plaintiff with adjustment disorder with mixed anxiety and depressed mood. (R. at 809.)

## IV. ADMINISTRATIVE DECISION

On September 1, 2015, the ALJ issued her decision. (R. at 22-38.) The ALJ found that Plaintiff last met the insured status requirements of the Social Security Act through September 30, 2019. (R. at 24.) At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff had not engaged in substantially gainful employment since May 23, 2012, the alleged onset date. (*Id.*) The ALJ found that Plaintiff had the severe impairments of degenerative

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);

disease of his lumbosacral spine, degenerative disease of his knees, tarsal tunnel syndrome of his left foot, obesity, and poorly controlled hypertension. (*Id.*) She further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 31.) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> The [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can frequently balance and occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs but never climb ladders, ropes or scaffolds or work at unprotected heights. He can occasionally be exposed to temperature extremes and humidity.

(R. at 32.) In reaching her conclusions regarding Plaintiff's RFC, the ALJ accorded great weight to the opinions of the state agency consultants, Dr. Manos and Dr. Bolz, finding their opinions are generally consistent and well supported by medical evidence. (R. at 34-35.) The ALJ afforded little weight to Dr. Antoinio Phillips' opinion because his opinions related to temporary, non-permanent restrictions involved with Plaintiff's workers' compensation claim. The ALJ concluded that Dr. Phillips' opinions, therefore, have no significant relevance to Plaintiff's current RFC. (R. at 35.)

The ALJ afforded only partial weight to the opinion of Dr. Dubey, who had suggested that Plaintiff could do no more than simple work. She noted to the contrary that Plaintiff had engaged in work as a cook, which is neither unskilled nor low-pressure work, for 20 hours per week during much of the period under review. (R. at 30, 35.) The ALJ noted that Dr. Dubey's treatment notes do not document significant functional limitations to concentration, persistence, or pace, or ongoing persistent findings that support an inability to deal with work stress. (R. at

---

*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

30.) The ALJ also concluded that Dr. Dubey's findings and longitudinal records do not document significant, ongoing memory or other cognitive deficits. (*Id.*) Ultimately, the ALJ concluded that Dr. Dubey's assessment is not supported by the relevant evidence and not consistent with the record as a whole. (*Id.*)

Relying on the Vocational Expert's testimony, the ALJ concluded that Plaintiff can perform his past relevant work as a head chef and that he additionally retains the residual functional capacity to make a successful adjustment to other work that exists in significant numbers in the national economy. (R. at 36.) She therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 38.)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff puts forth three contentions in his Statement of Errors. He first asserts that the ALJ did not adequately define the evidence she used to support her determination of the weight given to the opinions of the treating sources, specifically Dr. Figg. Second, Plaintiff maintains that "[t]he ALJ failed to address the combined impairments." (Pl's Stmt. Of Errs., (ECF No. 9) at p. 1.) Finally, Plaintiff contends that the ALJ committed reversible error by failing to obtain a medical expert opinion regarding Plaintiff's impairments. The Court addresses each of these contentions of error in turn.

### A. Treating Physician – Dr. Figg

Although unclear, in his first contention of error, Plaintiff seems to fault the ALJ for failing to give sufficient weight to the opinions of Dr. Figg, whom Plaintiff implies was a treating physician. The following is Plaintiff's argument in support of this contention of error in full:

> In the present case, the ALJ relied heavily on the State Agency Medical consultants, and gave their opinions great weight. They did not examine Plaintiff, nor did they have the benefit of hearing his testimony. The ALJ's reliance on these experts alone is reversible error. *The ALJ erroneously does not define the weight given to the report of examining physician Gregory Figg, who validated Plaintiff's complaints of pain.* This is clear error. The ALJ must establish substantial evidence to support the weight she gives or does not give an opinion, *especially a treating source*. An opinion cannot be ignored. This case must be remanded to determine the weight to be given Dr. Figg's opinion and to determine if substantial evidence supports the weight given by the ALJ to the opinions of all the treating and examining sources.

(Pl's Stmt. Of Errs. (ECF No. 9), at p. 9-10) (emphasis added) (citations to record omitted.))

As an initial matter, inasmuch as Plaintiff intends to characterize him as such, Dr. Figg is not a treating source. Ordinarily, the ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . ." 20 C.F.R. § 416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). To qualify as a treating source, the physician must have an "ongoing treatment relationship" with the claimant. 20 C.F.R. § 404.1502. The Court must determine whether an ongoing treatment relationship exists at the time the physician's opinion is rendered. *Kornecky v. Comm'r of Soc. Sec.*, No. 04-2171, 167 F. App'x 496, 506 (6th Cir. Feb. 9, 2006) ("[T]he relevant inquiry is . . . whether [claimant] had the ongoing relationship with [the physician] *at the time he rendered his opinion.* [V]isits to [the physician] *after* his RFC assessment could not retroactively render him a treating physician at the time of the assessment."); *see also Yamin v. Comm'r of Soc. Sec.*, 67 F. App'x 883, 885 (6th Cir. 2003) ("These two examinations did not give [the physician] a long term overview of [the claimaint's] condition."). This is because "the

rationale of the treating physician doctrine simply does not apply" where a physician issues an opinion after a single examination. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

In the instant case, Dr. Figg only evaluated Plaintiff once in January 2015. This single examination simply did not give Dr. Figg a long-term overview of Plaintiff's mental condition. *Yamin*, 67 F. App'x at 885. Therefore, to the extent Plaintiff asserts that the ALJ erred by not affording controlling weight to the opinions of Dr. Figg, that position is misplaced.[4]

Plaintiff also seems to suggest that the ALJ erred by giving greater weight to the opinion from the state agency doctors, Diane Manos, M.D., and William Bolz, M.D., than to the opinion of Dr. Figg. Even if Dr. Figg had rendered an opinion, the ALJ permissibly relied on the state agency doctors' opinions in formulating Plaintiff's RFC. Both Drs. Manos and Bolz opined that Plaintiff could perform tasks consistent with the requirements of light work. (R. at 446-49, 462-65.) Under the regulations:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 404.1567(b)).

---

[4] Moreover, as the Commissioner points out, Dr. Figg never provided an opinion as to Plaintiff's limitations or his ability to work. His report concentrates on his treatment plan for Plaintiff. (R. at 1178.) Accordingly, the ALJ was under no duty to evaluate or assign any particular weight to Dr. Figg's treatment notes in the absence of any medical opinions as to Plaintiff's abilities. *See Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 n.3 (6th Cir. 2009) (doctor's responses "address the general relationship between [plaintiff's] spinal condition and the symptoms/limitations it may cause, rather than addressing the specific extent of [plaintiff's] limitations. . . [These] responses appear to be outside the scope of 'medical opinions' as defined in 20 C.F.R. § 404.1527(a)(2).").

State agency doctors are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(e)(2)(i). The fact that the state agency doctors did not have access to the testimony from the hearing does not inevitably render their opinions invalid.

Here, the state agency doctors rendered opinions about Plaintiff's ability to work during the period he claims he was disabled. The ALJ considered the record as a whole, including records that were submitted after the state agency physicians arrived at their conclusions, and properly found that the state agency doctors' opinions were consistent with the entire record. (R. at 34.) Although the record shows that Plaintiff had lumbar spine surgery and other positive findings after the state agency doctors render their opinions, the ALJ explained that she restricted Plaintiff from ladders and unprotected heights and concuded that that the record did not otherwise alter the state agency doctors' opinions. (*Id.*) Accordingly, the ALJ properly relied upon the opinions from the state agency doctors and assessed additional limitations based on records submitted after the reconsideration level. This conclusion is supported by substantial evidence.

Plaintiff's first contention of error is, therefore, **OVERRULED**.

### B. Combined Impairments

In his second assignment of error, Plaintiff contends only that "[t]he ALJ failed to address the combined impairments." (Pl's Stmt. Of Errs., (ECF No. 9) at p.10.) This is Plaintiff's complete argument to support this supposition:

> The bulk of the decision is spent discounting the opinion of the Consultative Examining Psychologist, Dr. Dubey, so that the effect of the combined impairments does not have to be addressed in the assessment of the plaintiff's

12

> disability. (Tr. 35). This is erroneous. The combination of impairments must be addressed according to the Code of Federal Regulations § 404.1523. The effect of pain, mental impairments and physical disability must be assessed together to determine Plaintiff's true residual functional capacity.

*Id.*

The record fails to bear this argument out. Here, the ALJ considered Dr. Dubey's opinions and discussed them at length. (R. at 26-27, 29-30.) The ALJ acknowledged that Dr. Dubey diagnosed Plaintiff with adjustment disorder with mixed anxiety and depressed mood. (R. at 26-27.) Nevertheless, the ALJ found that such impairments considered singly and in combination, did not cause more than minimal limitations in his ability to perform basic mental work activities and were therefore not severe. (R. at 27.) To the extent Plaintiff challenges the ALJ's consideration of his diagnoses of mental impairments, his argument is without merit. *Cf. Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 930 (6th Cir. 2007) (holding that the mere existence of impairments does not establish that a claimant was significantly limited from performing basic work activities for a continuous period of time).

Plaintiff's second contention of error is **OVERRULED**.

### C. Medical Expert Opinion

Finally, in his third contention of error, Plaintiff maintains that the ALJ committed reversible error by failing to obtain a medical expert opinion regarding Plaintiff's impairments. (Pl's Stmt. Of Errs. (ECF No. 9) at p. 10.) More particularly, Plaintiff argues that the ALJ erred at step three because she did not obtain medical expert testimony.

Plaintiff suggests that the ALJ should have solicited medical expert to assess whether he met Listing 1.02A (major dysfunction of a joint) and 11.14 (peripheral neuropathy). As noted above, the state agency doctors already found that Plaintiff did not meet Listing 1.02. The ALJ did not specifically discuss Listing 11.14. But, Plaintiff has not offered any evidence to show that he would satisfy the requirements of that Listing. Moreover, beyond indicating that Listing 11.14 is "extremely complicated," Plaintiff fails to provide any reason why the ALJ should have resorted to a medical expert to determine whether he met the Listing. *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014) ("[N]either the listings nor the Sixth Circuit require the ALJ to 'address every listing' or 'to discuss listings that the applicant clearly does not meet.'").

Even had the ALJ specifically addressed Listing 11.14, Plaintiff failed to adduce any evidence that he met the requirements. Listing 11.14 requires peripheral neuropathy characterized by A or B:

A. Disorganization of motor function in two extremities . . . resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities.

or

B. Marked limitation in physical functioning, and in one of the following:

1. Understanding, remembering, or applying information; or
2. Interacting with others; or
3. Concentrating, persisting, or maintaining pace; or
4. Adapting or managing oneself.

Here, Plaintiff offers no evidence to satisfy either element. For instance, Plaintiff has not shown and the record does not contain any evidence that he had a marked or extreme limitation in functioning.

Under all of these circumstances, the Court concludes that the ALJ was not obligated to request medical expert testimony to evaluate whether Plaintiff met that Listing. Plaintiff's third contention of error is **OVERRULED**.

## VII. CONCLUSION

In sum, from a review of the record as a whole, the Court concludes Plaintiff's Statements of Error lack merit and that substantial evidence supports the ALJ's decision denying benefits. Accordingly, Plaintiff's Statement of Errors is **OVERRULED**. The Commissioner of Social Security's decision is **AFFIRMED**. The Clerk is **DIRECTED** to enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

Date: March 19/h, 2017

EDMUND A. SARGUS, JR.
CHIEF UNITED STATES DISTRICT JUDGE